HERKIMER COUNTY.—HON. AMOS H. PRESCOTT, SURROGATE.—
JANUARY, 1874.

## PIPER *v.* BARSE.

*In the matter of the Accounting of* CHARLES BARSE,
*Executor of the last Will and Testament, and Codicil
to the same, of* TIMOTHY BARSE.

On the question of advancement or ademption of a legacy, when raised by
the executor, against the claim of the legatee, the burden is on the
executor to prove satisfaction.[*]

When a parent procures third persons to convey property to his
daughter for a consideration, moving from himself, the presumption
is that it is an advancement, equally as where he makes the convey-
ance himself.

The circumstance that he subsequently executed a codicil, in which he
made no reference to the legacy, has no weight on the question.

Testator gave a legacy of $1,500 to each of his daughters. expressing
however, in the will, his intent to pay the legacies in his lifetime.
Subsequently he procured a third person, for a consideration of $1,600,
moving from testator, to convey real property to one of the legatees,
declaring, at the same time, that he intended to require the daughter
to give him her note for the excess of $100, to equalize his gifts.
*Held,* That this showed payment of the legacy.

THIS accounting was a proceeding in behalf of Cathe-
rine Piper, to compel the executor to pay over to her a
legacy of $1,500, which she alleged was due and paya-
ble by the provisions of the will.

The testator duly made and published his will on
the 29th day of December, 1869. The third clause of
the said will was as follows:

"*Third.* I give and bequeath to my daughter, Eliza-
beth Aurman, the sum of fifteen hundred dollars, and to
my daughter, Catherine Piper, the sum of fifteen hun-

---

[*] Where the will refers for evidence of advancement to charges, &c., in
testator's books, evidence of such charges in books of a partnership of
which he was a member, and that he kept no other books, is competent.
(*Lawrence* v. *Lindsay,* 7 *Hun.* 641.) And compare *Camp* v. *Camp, post.*

dred dollars; and if not paid by myself in my lifetime, as I now intend to do, the said legacies, or so much thereof as at my decease may remain unpaid, I hereby order and direct my executrix and executor to pay out of the first moneys collected or received by them out of my estate after my decease."

On the 22d day of June, A. D. 1872, the testator duly made and published a codicil to said last will, and died soon after.

The codicil had no reference whatever to the provisions of the will, and did not in any manner affect the same.

The executor, on the accounting, appeared and claimed that the legacy to Catherine Piper had been paid by the testator in his lifetime, by procuring a conveyance to her, in 1871, of property of that value, the details respecting which are stated in the opinion.

E. GRAVES *and* A. M. MILLS *for the claimant.*

J. A. & A. B. STULE *for the executor.*

THE SURROGATE.—The counsel for the claimant insist, that the fact that the testator made and published the codicil above referred to, and said nothing in it in regard to the legacy to the claimant, is important, if not conclusive, upon the question of the payment of the legacy by the testator in his lifetime. I cannot see that it has any bearing whatever on the question. The testator simply makes no allusion to the subject one way or other. If he had paid it, it was necessary for him to change his will; the legatee could demand the legacy but once; and it can be claimed with equal propriety, that if he intended to give the Spinner lace to Mrs. Piper, aside from, and independent of, the legacy, he would have referred to it in his will.

Suppose a receipt or writing had been found among

the testator's papers after his death, showing clearly and fully that this legacy had been paid by the testator in his lifetime, would there be any doubt about its being conclusive? Certainly not.

The question, therefore, is, has the executor proved that the testator did, in fact, pay this legacy to the legatee in his lifetime? The affirmative of this proposition is with the executor, and depends upon the solution of the transaction that occurred in regard to the conveyance of the house and lot on Prospect street in the village of Herkimer, from Charles Spinner to the legatee. It is not disputed that on the 28th day of January, 1871, Charles Spinner and wife duly made, acknowledged, signed, sealed and delivered, a deed to Catherine Piper, the legatee above named, conveying to her a house and lot on Prospect street, and that the said legatee, in virtue of said conveyance, received the title to said house and lot, and now holds the same under and by said conveyance. The consideration for said conveyance was the sum of one thousand six hundred dollars, and the whole sum was paid by the testator, and the negotiations in regard to the place, and the delivery of the deed from the grantor, and the whole transaction in regard to the same, were had by the said testator, and at the time he took the deed, and as a part of the transaction, he said it was to pay Mrs. Piper, the legatee, the sum of fifteen hundred dollars; the testator saying, at the same time, it was for the purpose of making her equal with the other girls, and that each of the girls were to have, or had, $1,500, and no more, of his estate. There is another very significant fact connected with this matter, to wit, what the testator said about the one hundred dollars. The testator paid Spinner $1,600 for the place. He said he should require of Mrs. Piper her note for the one hundred dollars, because he did not

intend to give her more than the other girls,— that is, one thousand five hundred dollars.

In considering the question bearing upon the payment of the legacy, it is important to bear in mind that this transaction occurred quite a long time before the testator's very severe sickness, and when he was in health, comparatively speaking;— at all events, no particular change had then taken place in the health of the testator, and nothing had then occurred to indicate any reason why the testator should at that time desire to give to this legatee any more than he had provided for in his will. The conclusion seems to be irresistible that the testator intended by the transaction referred to, to pay this legacy and nothing else; and the language of the clause of the will, by which the testator declares his intention to pay the daughters in his lifetime, is not only quite significant of what the testator intended to do at the time he made his will, but reflects very strongly upon the transaction herein before referred to, because I can see no reason why the testator should do as he did at the time, in that transaction, unless he was carrying out the aforesaid expressed intention.

But another question arises here, which I think must dispose of the case without regard to what has been said in reference to the conveyance from Spinner, and the giving or requiring the note of one hundred dollars for the balance of the said consideration. What is the legal presumption? It has long been held that when a parent conveys land to his child, without asking or receiving any consideration, the presumption is that the gift is an advancement; the fact that the conveyance was made direct from Spinner and wife to the legatee does not change the rule or the transaction. The deed was doubtless made in that way to avoid the

necessity and expense of a second conveyance. There is no pretense but that the testator paid the money and transacted all of the business, and the matter must be treated precisely as though the conveyance was made to the legatee directly from the testator and without any part of the consideration being paid by her. The case of *Sanford* v. *Sanford* (5 Lansing, 486), and the authorities there cited, I regard as controlling and deciding this question and placing the question in such a legal aspect as to be controlling upon this court in the decision of this case.

It is true that, after the transaction of the Spinner conveyance, the testator was much out of health, and required and received the services of his daughter, Mrs. Piper, but she was amply remunerated for it by the conveyance of the house and lot, from the testator, by the deed of June 22d, 1872, which was made and executed but a short time before the death of the testator, which occurred in the month of August, in the same year. It is evident that she received that on account of the fact that her father desired to reward her for services in sickness. The conclusion to which I have arrived is, that a decree must be entered, denying the claim of the claimant to the legacy in question, adjudging and deciding that the said legacy was paid to the said legatee, by the said testator, in his life time.

Decree accordingly.